UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIM PHILIBOTTE, individually and as a representative of other persons similarly situated, | * * * * |
| Plaintiff, | * * |
| v. | * * |
| | * Civil Action No. 14-11300-MGM |
| NISOURCE CORPORATE SERVICES COMPANY, d/b/a Nisource Services Inc., d/b/a Bay State Gas Company, d/b/a Northern Utilities, Inc., d/b/a Columbia Gas of Massachusetts, and AGL RESOURCES INCORPORATED, d/b/a Nicor Energy Services Company, d/b/a Columbia Home Solutions, | * * * * * * * * * |
| Defendants. | * |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 18)

December 9, 2014

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Kim Philibotte ("Plaintiff") brings this putative class action against Nisource Corporate Services Company and AGL Resources Incorporated ("Defendants").[1] Plaintiff's claims arise out of a purported lease of a water heater through Defendants. Plaintiff asserts that the "lease" was actually a disguised credit sale and, therefore, Defendants were required to make certain disclosures under the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., the Massachusetts Consumer

---

[1] Plaintiff also names the following entities as doing business as ("d/b/a") Nisource Corporate Services Company: Nisource Services Inc., Bay State Gas Company, Northern Utilities, Inc., and Colombia Gas of Massachusetts. In addition, Plaintiff names the following entities as d/b/a AGL Resources Incorporated: Nicor Energy Services Company and Columbia Home Solutions. Although Defendants take issue with the naming of these additional entities, the court need not address this argument in light of its resolution of the motion to dismiss.

Credit Cost Disclosure Act ("CCCDA"), M.G.L. c. 140D § 1 et seq. (Count I), and the Massachusetts Retail Installment Sales and Services Act ("RISSA"), M.G.L. c. 255D § 1, et seq. (Count III). Plaintiff also asserts claims for unjust enrichment (Count II) and violations of Mass. Gen. Laws ch. 93A (Count IV).

Defendants have filed a motion to dismiss asserting that Plaintiff's complaint fails to state a claim upon which relief may be granted. For the following reasons, the court will grant Defendants' motion to dismiss.

## II. Background

The following facts come directly from Plaintiff's amended complaint and the attachment thereto. In January, 2011, Plaintiff returned home from a vacation and discovered that her hot water heater was not working. (Dkt. No. 14, Am. Compl. ¶ 6.) She then called Columbia Gas, which sent agents to her home who explained that the best and cheapest way to proceed was for her to sign a "lease" of a Ruud 40 gallon regular vent water heater Model P2-40SF Serial #0610A00398. (Id.) The lease called for monthly payments of $17.00 for a minimum term of twelve months, with "Total Payments" at the end of the minimum term of $204. (Id. ¶¶ 6-7; Dkt. No. 14, Exhibit A ¶ 2.) The lease terms were not explained to her, and she was not provided any truth-in-lending disclosures. (Dkt. No. 14, Am. Compl. ¶ 6.) At the time, the Ruud water heater had a full retail market value, including installation, of $400 to $500 with a maintenance free life expectancy of at least ten years and a six-year manufacturer's warranty. (Id. ¶¶ 6, 10.) After the minimum term of twelve monthly payments, the lease automatically renewed unless Columbia Gas or Plaintiff terminated it by providing thirty days' written notice. (Id. ¶ 7; Dkt. No. 14, Exhibit A ¶ 2.)

The lease provided that "[t]he Appliance is and shall at all times during the term of this Lease remain the personal property of the Company. . . . By leasing the Appliance, the Customer

2

obtains no property interest in the Appliance." (Dkt. No. 14, Exhibit A ¶ 15.)  Moreover, the lease provided that the "Customer agrees to surrender the Appliance to the Company upon demand in the event of termination of this Lease . . . and the Company shall have the right to enter the premises for the purpose of removing the Appliance."  (Id. ¶ 12.)  The lease did not, however, require that the water heater ever be returned; in fact, Plaintiff alleges, Defendants do not want the water heater returned and only take it back "if specifically requested to do so by the homeowner" because it will cause them to incur the cost of removal and a disposal fee of $50.  (Dkt. No. 14, Am. Compl. ¶¶ 7, 13, 16.)

The lease included an "option to purchase," which required a payment of "the greater of $75.00 or an amount equal to the Total Installed Price [$761.57], less 50% of the total Monthly Lease Payments paid through the purchase date . . . plus any sales tax (the 'Buyout Price')."  (Dkt. No. 14, Exhibit A ¶ 6.)  In addition, the lease provided an early termination and default option under which Plaintiff could terminate the lease before the end of the minimum term by paying "the Monthly Lease Payments due for the entire Minimum Term [$204] less lease payments made through termination, plus any applicable tax."  (Id. ¶ 13.)  Again, this option did not explicitly require the return of the water heater.  (Dkt. No. 14, Am. Compl. ¶ 13.)  The lease also required Plaintiff to "notify the Company 30 days in advance of any sale or transfer of the Premises, and [to] notify in writing any prospective purchaser or tenant that the title to the Appliance is with the Company."  (Dkt. No. 14, Exhibit A ¶ 7.)  Furthermore, the lease provided that if the new purchaser of the premises "does not promptly assume the Lease, then the Customer shall pay the Company the Buyout Price" in accordance with the "option to purchase" provision.  (Id.)

In February of 2014, "[a]fter realizing that she was being ripped off," Plaintiff exercised her option to purchase. (Dkt. No. 14, Am. Compl. ¶ 18.)  In response, Columbia Gas sent her correspondence requiring that she sign an "appliance sales agreement," even though that was not

3

required under the terms of the lease. (Id.) The appliance sales agreement represented that "[a]ny remaining warranty is automatically transferred to you at the time of purchase," even though the warranty always ran to the owner of the property. (Id.) Columbia Gas required Plaintiff to pay a buyout price of $491.06 after having paid three years of monthly lease payments, for a total cost of $1,067.60. (Id. ¶ 18.)

### III. STANDARD OF REVIEW

When confronted with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept the well-pleaded allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). A complaint that states a plausible claim for relief, on its face, will survive a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### IV. ANALYSIS

In seeking dismissal, Defendants argue that Plaintiff's claims pursuant to CCCDA, TILA, RISSA, and Mass. Gen. Laws ch. 93A fail as a matter of law because the water heater lease was not a "credit sale" for purposes of CCCDA and TILA or a "retail installment sale" for purposes of RISSA. Defendants also argue that the claim under TILA is barred by the statute of limitations in any event, that Plaintiff's unjust enrichment claim is not viable because of the existence of a contract, and that issue preclusion bars all of Plaintiff's claims because summary judgment entered in favor of Defendants last year in a similar action brought by Plaintiff's counsel in Massachusetts

Superior Court.[2] Plaintiff, on the other hand, disputes these arguments and asserts that she has alleged viable claims.

A.      Statutory Scheme

The CCCDA, TILA, and RISSA impose certain disclosure requirements for consumer transactions that meet the statutory definition of a "credit sale" in the case of CCCDA and TILA, and a "retail installment sale agreement" in the case of RISSA. Under CCCDA, the term "credit sale" includes

> any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

M.G.L. c. 140D, § 1. Similarly, under RISSA, a "retail installment sale agreement" includes

> any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the value of goods involved and it is agreed that the bailee or lessee will become, or for no other or for a nominal consideration has the option to become the owner of the goods upon full compliance with his obligations under the contract.

M.G.L. c. 255D, § 1. Moreover, TILA includes the same definition for "credit sale" as CCCDA. See 15 U.S.C. § 1602. And the parties agree that the disclosures required by CCCDA and RISSA constitute the disclosures required by TILA due to an exemption granted to Massachusetts by the Federal Reserve Board for states that adopt legislation that imposes "substantially similar"

---

[2] Although the court need not address Defendants' issue preclusion argument in light of the other arguments for dismissal, it briefly notes its agreement with Plaintiff that issue preclusion does not apply here because she is not in privity with the plaintiff in Saia v. Baystate Gas Co. since that action was never certified as a class action. See Smith v. Bayer Corp., 131 S.Ct. 2368, 2381 n.11 (2011) ("The great weight of scholarly authority—from the Restatement of Judgments to the American Law Institute to Wright and Miller—agrees that an uncertified class action cannot bind proposed class members."); Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 51 (1st Cir. 1997) (explaining that "Massachusetts courts 'apply the doctrine of issue preclusion in a traditional manner' and that First Circuit "cases apply the same traditional preclusion principles that would control in a Massachusetts court." (quoting Willhauck v. Halpin, 953 F.2d 689, 705 (1st Cir. 1991))). Moreover, the mere fact that two parties used the same attorney does not, by itself, establish "privity" between the parties. See, e.g., Yorulmazoglu v. Lake Forest Hosp., 834 N.E.2d 468, 474-75 (Ill.App.Ct. 2005) (collecting cases); Metro Industries, Inc. v. Sammi Corp., 82 F.3d 839, 848 n.6 (9th Cir. 1996) (collecting cases)

5

requirements as TILA. See Belini v. Washington Mut., 412 F.3d 17, 20 (1st Cir. 2005); see also 15 U.S.C. § 1633; 12 C.F.R. § 226.29(b)(2).

In addition, Mass. Gen. Laws ch. 93A provides consumers a private right of action for unfair or deceptive business practices. M.G.L. c. 93A, §§ 2 and 9. Here, Plaintiff alleges that Defendants' non-compliance with CCCDA, TILA, and RISSA constitute the unfair and deceptive business practices which violate Chapter 93A. (Dkt. No. 14, Am. Compl. ¶ 78.)[3] Accordingly, if Plaintiff's claims pursuant to CCCDA, TILA, and RISSA are not viable, her claim under Chapter 93A necessarily fails as well.

B.   True Lease or Disguised Credit Sale?

Defendants rely on Silva v. Rent-a-Center, 912 N.E.2d 945 (Mass. 2009), in support of their argument that the water heater lease does not fit within the definition of a "credit sale" or a "retail installment sale agreement" and, therefore, that Counts I, III, and IV should be dismissed. In response, Plaintiff argues that because Defendants have no intention of retaining a reversionary interest and in light of the "economic realities" of the transaction, the lease was actually a credit sale. The court concludes that Defendants have the better argument.

In Silva, the Supreme Judicial Court construed the definition of "retail installment sale agreement" in RISSA, explaining, after quoting the language, that "[t]he statute thus recognizes that leases may be characterized as installment sales only if specific requirements are satisfied." Silva, 912 N.E.2d at 950 (emphasis added). The court stated that "[f]or a lease to qualify as a 'retail installment sale agreement' it must satisfy both definitional requirements." Id. at 950 n.11. "That is, it must obligate the consumer to pay an amount substantially equivalent to, or in excess of the goods involved and the consumer must have the option to become the owner for no other or nominal

---

[3] Plaintiff also alleges that "Defendants have failed to make a reasonable settlement offer in response to demands for such made pursuant to § 9 of Chapter 93A." (Id.) But "[t]he failure to respond to a c. 93A demand letter is not itself a violation of our consumer protection law; rather, the lack of response may be considered in calculating damages in the event a violation is shown." Williams v. Mann, 2013 WL 373653, at *1 (Mass.App.Ct. Feb. 1, 2013) (unpublished).

consideration on full compliance with his or her contractual obligations." Id. (emphasis in original). Applying RISSA's definition to the facts of that case—which involved a week-to-week rent-to-own agreement for a laptop computer after which the consumer could become owner by renting for a certain number of weeks—the court held that

> [n]ot only does [the plaintiff's] agreement not require (as opposed to permit) him to pay a "sum substantially equivalent to or in excess of the value of the goods involved," G.L. c. 255D, § 1, but it does not permit him, "upon full compliance with his obligations under the contract" for the original term, to become the owner for a "nominal consideration."

Id. at 950 (emphasis in original). The same conclusion is warranted here.

Significantly, the court in Silva explained that in determining whether an agreement is a "true lease" or a disguised "retail installment sale agreement," courts may only look to the initial term of the lease and may not look to the possibility that the lease will be renewed multiple times. The court explained:

> It may be that if a consumer exercises his or her right to renew a consumer lease multiple times, the lease payments eventually will exceed the value of the item. But application of a regulatory framework does not depend on the economics of hindsight. We look, instead, to the nature of the contract at the time it was formed, focusing on the parties' contractual rights and obligations at that point.

Id. at 951. Thus, the court held that "because [the plaintiff's] contract did not require payments totaling an amount substantially equivalent to the value of the leased item, the mere possibility of a nominal purchase option if he undertook multiple renewals of the lease did not make the transaction an installment sale within the meaning of" RISSA. Id.

Here, based on a straightforward application of Silva, it is clear that Plaintiff cannot satisfy either of the two prongs necessary for a lease to be considered a "retail installment sale agreement" under RISSA or a "credit sale" under CCCDA.[4] The original term of the water heater lease called

---

[4] Although the claim in Silva was only brought under RISSA, the definitional language in CCCDA is almost exactly the same and the court referenced CCCDA in the decision. See id. at 952 n.12. Accordingly, the same standard discussed in Silva is applicable to CCCDA claims.

for monthly payments of $17.00 for twelve months, for a total of $204. Plaintiff alleges that the value of the water heater is $400 to $500, including installation. Thus, after the initial term of the lease—which is all the court may look to—Plaintiff was required to pay significantly less than the value of the good. That is, $204 is not "substantially equivalent to or in excess of the value of" the water heater and, therefore, the first prong has not been met.

As for the second prong, Plaintiff could only become the owner of the water heater if she paid the "Buyout Price," which was "the greater of $75.00 or an amount equal to [$761.57], less 50% of the total Monthly Least Payments paid through the purchase date . . . plus any sales tax." (Dkt. No. 14, Exhibit A ¶ 6.) Under this formula (without considering any sales tax), Plaintiff could become the owner of the water heater after the initial term by paying $659.57. Again, this amount does not equal "no other or nominal consideration" and, thus, Plaintiff cannot satisfy the second prong.

Granted, Plaintiff alleges that Defendants do not actually want the water heater back at the end of the lease, whereas in Silva the plaintiff was required to return the laptop at the end of a weekly term if he chose not to continue the arrangement. The court, of course, must accept this allegation as true at this stage of the litigation. But the Supreme Judicial Court in Silva explained that courts must look to "the nature of the contact at the time it was formed, focusing on the parties' contractual rights and obligations at that point." Id. And the contract here explicitly states that the "Customer agrees to surrender the Appliance to the Company upon demand in the event of Termination of this Lease . . . and the Company shall have the right to enter the premises for the purpose of removing the Appliance." (Dkt. No. 14, Exhibit A ¶ 12.) Moreover, the contract also states that "[t]he Appliance is and shall at all times during the term of this Lease remain the personal property of the Company. . . . By leasing the Appliance, the Customer obtains no property interest in the Appliance." (Id. ¶ 15.) Thus, whatever Defendants' practice or intent is with regard to the

8

removal of the water heaters, the contract clearly provides Defendants with the right to possess (and obligates the consumer to surrender upon demand) the heaters at the conclusion of the lease and explicitly states that the consumer does not obtain a property interest in the appliance simply by leasing it. In other words, the contract provides Defendants with a reversionary interest in the appliance even though, according to Plaintiff, it is generally not exercised.

The court is also aware that in the related Saia action, the Massachusetts Appeals Court reversed the Superior Court's dismissal at the motion to dismiss stage on similar facts.[5] Saia v. Baystate Gas Co., 2012 WL 1145913 (Mass.App.Ct. April 6, 2012) (unpublished). That decision, however, failed to mention Silva and conflicts with the Supreme Judicial Court's reasoning by looking to the possibility of multiple renewals of the contract. In response to the defendant's argument that the contract did not permit the plaintiff to purchase the water heater for no other or nominal consideration, the Appeals Court explained that "[t]his argument ignores the fact that the terms of the contract appear to make it possible for Saia (depending on how long she continues to make lease payments after the end of the minimum lease term) to purchase the water heater for as little as $75." Id. at *2. As mentioned, the court in Silva explicitly disapproved of such an approach, explaining instead that courts should only consider the original term of the lease. See Silva, 912 N.E.2d at 951. Accordingly, although the Saia appeal is more on-point factually,[6] this court is bound by the Supreme Judicial Court with regard to its interpretation of state law. See Barton v. Clancy, 632 F.3d 9, 17 (1st Cir. 2011) (federal courts "look to the pronouncements of a state's highest court

---

[5] Upon remand, the Superior Court granted Defendant's motion for summary judgment, relying on Silva. (Dkt. No. 19-5, Mem. of Decision and Order.) The plaintiff has also appealed that ruling, and the parties are awaiting another decision by the Massachusetts Appeals Court.

[6] Saia, however, is distinguishable as to the first prong discussed in Silva. The contract at issue there required the plaintiff to lease the water heater for a minimum term of three years, with total payments for this initial term of $1,233.76. Saia, 2012 WL 1145913, at *1. The plaintiff alleged that the value of the water heater was $1,200, including installation. (Dkt. No. 19-1, Am. Compl. ¶ 5.) Thus, although the Massachusetts Appeals Court did not address this issue, it appears that the first prong was satisfied because the plaintiff had to pay an amount substantially equivalent to or in excess of the value of the good during the initial term of the lease. Here, as discussed, the court concludes that the $204 Plaintiff was required to pay during the initial term is not substantially equivalent to the value of the water heater.

9

in order to discern the contours of that state's law"). As such, the court will follow Silva's interpretation of the statutory definitions previously discussed and not the first Saia appeal.

Moreover, Plaintiff's primary citation in support of her argument that the water heater lease was a disguised credit sale, Davis v. Colonial Securities Corp., 541 F.Supp. 302 (E.D.Pa. 1982), similarly conflicts with Silva. In Davis, the court examined, under TILA, a month-to-month housing rental agreement. Id. at 303. Contrary to Silva, however, the Davis court looked beyond the minimum one-month term of the lease and held that the "economic realities" of the contract made it a disguised credit sale rather than a true lease. Id. at 305-306. As mentioned, the Federal Reserve granted Massachusetts an exemption such that the disclosures required by CCCDA and RISSA constitute the disclosures required by TILA. See Belini, 412 F.3d at 20; see also 15 U.S.C. § 1633; 12 C.F.R. § 226.29(b)(2). Accordingly, the definition of "credit sale" applicable to the required disclosures is also incorporated into TILA and, thus, Silva also controls Plaintiff's TILA claim.[7] See McKenna v. First Horizon Home Loan Corp., 537 F.Supp.2d 284, 287-88 (D.Mass. 2008) ("Massachusetts is one of the few states to which the Federal Reserve has granted an exemption from TILA for certain classes of credit transactions; in Massachusetts, 'as to certain TILA requirements the federal provisions have no force and creditors are subject to state requirements that are generally quite similar and often identical to the federal requirements.'" (quoting Belini, 412 F.3d at 20)). As a result, Davis provides little help to Plaintiff.

Because the court concludes that Plaintiff has failed to state claims pursuant to CCCDA, TILA, and RISSA, it also concludes that her Chapter 93A claim is subject to dismissal. Accordingly, the court will grant Defendants' motion as to Counts I, III, and IV.

---

[7] Even if the court's analysis of Plaintiff's TILA claim somehow were not governed by Silva, the court would nonetheless conclude that this claim is barred by the statute of limitations. See 15 U.S.C. § 1640(e) ("[A]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . .")

C.  Unjust Enrichment

Lastly, Defendants argue that the court should dismiss Plaintiff's unjust enrichment claim because such claims are not available when a contract exists. In response, Plaintiff argues that unjust enrichment claims are available even though a contract exists if the contract is invalid due to fraud, misrepresentation, mistake, illegality, indefiniteness, or incapacity. See, e.g., Broderick v. PNC Mortg. Corp., 2013 WL 1187111, at *3 (D.Mass. March 20, 2013). Plaintiff contends that the contract here falls within these exceptions.

The court agrees with Defendants that Plaintiff has not sufficiently alleged that any of these unjust enrichment exceptions apply. Although Plaintiff contends that throughout her complaint she alleged that the agreement constitutes a "fake" lease, her claims and allegations pertain to whether Defendants complied with CCCDA, RISSA, and TILA. She does not set forth affirmative claims or allegations demonstrating that the contract is otherwise unenforceable due to freestanding fraud, misrepresentation, mistake, illegality, indefiniteness, or incapacity. Simply put, attacking the agreement on those grounds entails a completely different analysis than that which Plaintiff pursues in her complaint. Accordingly, the existence of an express contract here precludes Plaintiff's claim for unjust enrichment, which is really a claim based on an "implied contract." See Zarum v. Brass Mill Materials Corp., 134 N.E.2d 141, 143 (Mass. 1956) ("The law will not imply a contract where there is an existing express contract covering the same subject matter."); Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006) ("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment."). The court will therefore dismiss Count II of Plaintiff's amended complaint.

V.  CONCLUSION

For these reasons, the court ALLOWS Defendant's motion to dismiss (Dkt. No. 18).

It is So Ordered.

                                                                                /s/ Mark G. Mastroianni
                                                                                MARK G. MASTROIANNI
                                                                                United States District Judge